## Commonwealth *v.* James, Appellant.

Submitted March 26, 1974.   Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

*R. Barclay Surrick,* Assistant Public Defender, for
appellant.

*John G. Siegle* and *Anna I. Vadino,* Assistant Dis-
trict Attorneys, and *Stephen J. McEwen, Jr.,* District
Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., September 23, 1974:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, of Delaware County, by the defendant, Herbert James, after conviction by a jury of burglary, larceny and conspiracy. He had been charged with receiving stolen goods but that charge was withdrawn prior to commencement of the trial. Post-trial motions were denied by the court en banc with one judge dissenting and he was sentenced to pay the costs of prosecution and to undergo imprisonment for not less than two (2) years nor more than four (4) years.

The question raised by this appeal is the sufficiency of the evidence. There is no complaint concerning the conduct of the trial or the charge of the court.

The facts are as follows: On the night of September 22, 1972, at about 11:19 P.M. police officers responded to a police radio call of a burglary in progress at the Skies and Ties Men's Shop, Chester, Pennsylvania. The store has one entrance by way of two glass doors. In front of the doors there is a "Cyclone fence". Upon arriving at the store, the police officers stopped their car in front of a door that had been broken. They observed a co-defendant, not in this appeal, inside the "Cyclone fence" attempting to climb over the gate. Outside the gate they found various articles of clothing. Wilson, the co-defendant, fought with the officers but was subdued. As this was going on, other officers arrived and went to the rear of the store. There was no rear entrance to the store itself, but there is a stairway which leads to an apartment on the second floor. The officers checked the area and found a fifty (50) gallon drum directly underneath the stairway. On top of the drum were found thirteen pairs of trousers. About eight to ten feet away from the drum, the defendant James was found in a crouched position under the

stairway. He gave no response to a question as to what he was doing under the stairway.

The premises had been checked by the police at about 11:10 P.M. and the store doors were intact and secured. The owner of the store identified the trousers as being his goods. The clothing found in front with Wilson was also identified as his goods.

The defendant did not take the stand nor was any testimony produced in his defense. While it is true that the Commonwealth must prove every essential element of a crime beyond a reasonable doubt, it is well established that the Commonwealth may sustain this burden by means of wholly circumstantial evidence. *Commonwealth v. Cimaszewski,* 447 Pa. 141, 288 A. 2d 805 (1972) ; *Commonwealth v. Slavik,* 437 Pa. 354, 261 A. 2d 583 (1970).

It is also well settled that the test in a criminal case of the sufficiency of the evidence is: "Whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Paquette,* 451 Pa. 250, 253, 301 A. 2d 837 (1973) ; *Commonwealth v. Williams,* 450 Pa. 327, 301 A. 2d 867 (1973).

The defendant contends that since the Commonwealth's evidence consisted only of the fact that the appellant was apprehended at night while hiding in the vicinity of a store near where merchandise which had been taken was found is insufficient to sustain the verdicts. The appellant relies heavily on the cases of *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A. 2d 396 (1973) and *Commonwealth v. Stanley,* 453 Pa. 467, 309 A. 2d 408 (1973).

In *Roscioli,* supra, the Supreme Court by a plurality of four decision reversed a conviction of burglary since

the defendant's presence in the vicinity of a crime was explained and there was no evidence that demonstrated that the defendant had participated in the perpetration of the crime.

In *Stanley,* supra, it was held by the Supreme Court that mere presence or nearness to the scene of the crime is insufficient to sustain a conviction of attempted burglary since the defendant's involvement could not be established. The Commonwealth did not prove the time when the building was entered, and four hours had elapsed between the time the building in question was locked and the time the defendant was found at the scene.

Unlike these cases, the instant case presents facts and circumstances which establish more than mere proximity of the defendant to the scene of the crime. Testimony clearly established that ten minutes prior to the burglary the store in question was locked and secured. Then at 11:19 P.M. in response to a burglary in progress radio call, police officers arrived at the scene and found the store broken into, a man climbing over a gate from the store with goods taken from the store at his feet. In the rear of the store they found the defendant hiding under a stairway some ten feet from goods taken from the store. All of this took place in a short period of time, at most, about fifteen (15) minutes from the call until the arrests were made. At 11:10 P.M. a check had been made on the security of the store and at 11:19 P.M., the police were on their way to a burglary in progress. This evidence with the reasonable inferences that the jury could draw therefrom is far more than mere suspicion or conjecture as was the case in *Stanley* and *Roscioli,* supra.

Unlike *Roscioli* and *Stanley,* supra, the element of time, proximity to the scene of the crime and proximity to the goods stolen form a sufficient basis in law to sustain the counts of burglary and larceny.

In addition to all the other facts, it is pertinent to the charge of conspiracy that there was no rear entrance or exit to the store. The defendant was ten feet away from the stolen goods and he was hiding under the stairway. How did he and the goods get there? He does not say, but surely the jury may draw inferences. This together with the co-defendant climbing the front fence with stolen merchandise at his feet constitute the "concerted conduct" to support the conviction of conspiracy.

Judgment of sentence affirmed.

_____

DISSENTING OPINION BY HOFFMAN, J.:

The issue raised in this appeal is whether or not sufficient evidence was presented at trial to support appellant's conviction for burglary, larceny and conspiracy.

On September 22, 1972, at approximately 11:19 p.m., Chester Police Officers Sendek and Truell, in response to a radio message that a burglary was in progress, proceeded to the Skies and Ties Store in Chester, Pennsylvania. The store has one doorway in the front which is enclosed by a "Cyclone fence." When the officers arrived, they observed a man attempting to climb over the gate and noticed men's trousers laying at the foot of the fence. After a brief struggle, the officers subdued the man, later identified as William Wilson, placed him under arrest and radioed for assistance.

More units arrived and these officers went to the rear of the store. At the back of the building are two stairways which lead to second floor apartments. There is no entrance from the rear of the store to the yard. Thus, access to the rear yard could only be gained by means of an open gate from the street bordering on the rear yard or by proceeding from the front of the store to the rear. Mr. Dais, the owner of the store, testified that the gate was left open at all times so

as to provide the occupants of the apartments with access to the stairways leading up to the second floor.

When the police approached the rear of the store, they found the gate leading to the street open and the yard poorly illuminated. Using flashlights to conduct their search, the officers observed thirteen pairs of men's trousers lying on a barrel. Approximately eight to ten feet away from this drum, appellant was found in a crouched position under one of the stairways. Officer Sendek had climbed and descended this stairway without ever having observed appellant. Appellant was never seen prior to this time, and no stolen goods were found on appellant's person.

In determining whether the evidence is sufficient to prove appellant guilty beyond a reasonable doubt of the crimes charged, we must review the evidence in a light most favorable to the verdict winner. *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973). After a verdict of guilty, we must accept as true all of the evidence, direct or circumstantial, and all reasonable inferences arising from the evidence, upon which the trier of facts could properly have based the verdict. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974).

It is axiomatic that the Commonwealth may not sustain a conviction based solely on mere suspicion or conjecture. *Commonwealth v. Bailey,* 448 Pa. 224, 292 A.2d 345 (1972). Thus, mere presence at the scene of a crime without affirmative evidence of participation is insufficient to convict. *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966). Our Supreme Court has even held that evidence of flight coupled with presence is insufficient. *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973). In the instant case, presence at the scene is combined with evidence of "suspicious" circumstances. Circumstances of a similar nature were proven in *Commonwealth v. Stanley,*

453 Pa. 467, 309 A.2d 408 (1973) : A police officer observed appellant leave the entranceway of a store, walk to a construction site, bend over and place something in a sand pile. The officer brought appellant back to the store and noticed that the screen covering the store window had been pried open. He then went back to the sand pile and uncovered a screwdriver. The Supreme Court held the evidence insufficient to convict appellant for attempted burglary, since there was no evidence to show that the appellant had used the screwdriver and no proof that the screwdriver was in fact the instrument used to pry open the screen.

The Majority states that the facts presented in this case establish more than mere presence. It is true that the police responded to a radio call and observed appellant's co-defendant climbing over a gate with stolen goods. There is nothing in the record, however, to connect appellant with that individual. All the Commonwealth has shown is that appellant was arrested near the situs of stolen goods. The Majority, stressing that there is no rear entrance to the store, asks, "How did he and the goods get there?" It is clear from the record that there is an open gate connecting the rear yard to the street. Since appellant was not observed inside the store nor proceeding from the front of the store to the rear, it is certainly conceivable that he gained entrance to the rear yard for some unrelated purpose simply by walking through the open gate. Were it not for this alternative means of access to the rear yard, the appellant's apparent attempt to hide and the short time span between the arrival of the police and appellant's arrest would make the inference that appellant was a participant in the alleged crime more likely. Further, the record reveals that the rear yard was so poorly illuminated that flashlights were required to observe the stolen goods and appellant. The Commonwealth never proved that appellant was even

aware of the existence of the stolen trousers on the barrel.[1]

The Commonwealth's case is premised on presence and suspicion. There was no showing of a link between appellant and his alleged co-conspirator. *Cf. Commonwealth v. Cimaszewski,* 447 Pa. 141, 288 A.2d 805 (1972). This case is thus within the ambit of *Garrett* and its progeny.

I would reverse the judgment of the lower court.

---

[1] The record reveals that appellant did not respond to a question from the arresting officer concerning the reason he was under the stairway. The Fifth Amendment of the Constitution guarantees an accused the right to remain silent. Therefore, no adverse inference could have been drawn from the appellant's failure to explain his presence. *Commonwealth v. Dravecz,* 424 Pa. 582, 227 A. 2d 904 (1967).