Commonwealth *v.* Stevens, Appellant.

Submitted June 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William J. Brady, Jr.,* for appellant.

*William A. Richardson, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., December 1, 1975:

The appellant, Howard Stevens, was indicted by the Philadelphia Grand Jury for possessing a criminal instrument generally,[1] possessing a criminal weapon,[2] possessing a prohibited offensive weapon,[3] simple assault,[4] aggravated assault,[5] and robbery.[6] On December 17, 1974, the appellant was adjudged guilty by the trial judge, sitting without a jury, of theft[7] and acquitted of all other charges. Timely motions in arrest of judgment and for a new trial were denied by the lower court,[8] and a sentence of one year probation was pronounced. Appellant now questions the propriety of his conviction.

---

1. 18 Pa.C.S. §907(a).

2. 18 Pa.C.S. §907(b).

3. 18 Pa.C.S. §908.

4. 18 Pa.C.S. §2701.

5. 18 Pa.C.S. §2702.

6. 18 Pa.C.S. §3701.

7. Theft is a lesser included offense under the robbery indictment. *See* 18 Pa.C.S. §3701(a)(1), which provides that one must be "in the course of committing a theft" in order to commit a robbery.

8. The record shows that the allegations of error herein discussed were not specifically asserted in written post-trial motions as required by Pa.R.Crim.P. 1123(a). This appeal, however, was taken before our supreme court, in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), held that failure to file written post-trial motions alleging specific errors constitutes a waiver of those motions. Also, the opinion of the court below denying the motion for a new trial discussed these assignments of error evidencing that they were raised before the trial court. *See Commonwealth v. Irwin*, 460 Pa. 296, 333 A.2d 735 (1975), in which the Supreme Court allowed an appeal in a similar situation. For these reasons, we will consider these allegations of error as properly before us.

Read in the light most favorable to the verdict winner, *Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973), the record reveals the following: Early in the morning of September 13, 1974, the victim, Miss Dolores Nichols, was involved in an automobile accident at Broad and Venango Streets in Philadelphia. While she was giving details of the accident to police officers, the appellant, who apparently had been driving behind her, approached a police officer and proclaimed that he had seen the accident and Miss Nichols was not at fault. After giving his name and address to the police officer, the appellant began to transfer packages, containing women's pants suits and a dress, from her car to his car. Miss Nichols, understandably concerned, prompted a policeman to question the appellant, who explained that he was going to give Miss Nichols, whose car was severely damaged, a "lift." Miss Nichols consented, and the appellant drove her to the nearby El Dorado Club, where she worked as a barmaid, so that she could telephone her boyfriend. When she could not contact her boyfriend, the appellant volunteered to take her home. Miss Nichols accepted his offer, stating that she was grateful and would pay him.

As the appellant drove Miss Nichols home, he told her that she "looked good to him." When she responded negatively to his advances, he refused to stop at her house. Instead, he proceeded several blocks past her house, drew a knife, and forced Miss Nichols to have sexual intercourse with him. After the appellant finished, Miss Nichols asked that she be released and her packages returned. However, the appellant refused to give her the packages. He then took approximately $60 from her purse, and ordered her from his car. As he drove away, she memorized his license number and called the police. Later in the day, the appellant was arrested in his home, where two women's knit suits and one long-sleeve dress were found. Miss Nichols identified these clothes as the ones which were stolen from her.

Miss Nichols, fearful that her children, ages 12 and 14, would be adversely affected by the publicity, did not mention the rape to the police, telling them only of the theft. It was not until November 19, 1974, that she first revealed to an Assistant District Attorney that she had been raped. By that time, the preliminary hearing had already been held and the indictments for assault, robbery, and possessing instruments of crime had been entered. Although the Commonwealth did not return a bill of indictment for rape, it attempted to show circumstances which aggravated the robbery[9] by introducing evidence at trial which established that Miss Nichols was raped in addition to having been robbed by the appellant.

Appellant has advanced four assignments of error. We have determined that all of the allegations of error are without merit and will affirm the judgment of sentence.

Appellant's primary objection is to the admission at trial of evidence of rape. We agree that evidence tending to show that the accused has committed crimes other than the one for which he is being tried is generally inadmissible. *Commonwealth v. Terry*, 462 Pa. 595, 342 A.2d 92 (1975); *Commonwealth v. Jenkins*, 442 Pa. 588, 277 A.2d 356 (1971). As the Pennsylvania Supreme Court explained: " '[[T]]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip

---

9. At trial, an Assistant District Attorney explained: "[I] have been given full authority to go to trial on the bills that we have rather than attempt to take a statement and a rearrest of the rape, and we would ask the Court to consider any testimony about a rape . . . as an aggravation of the robbery." (NT 6)

him of the presumption of innocence'." *Commonwealth v. Terry*, 462 Pa. 595, 599, 342 A.2d 92, 95 (1975), *quoting Commonwealth v. Allen*, 448 Pa. 177, 182, 292 A.2d 373, 375 (1972).

There are, however, other purposes for which evidence of separate criminal acts may be offered, and when so offered the rule of exclusion is not applicable. One of these purposes is to complete the story of the crime for which the accused is being tried by proving its immediate context of events. This is often classified as proving a part of the "same transaction" or the "res gestae." *McCormick, Evidence* §190 at 448 (2d ed. 1972). The Pennsylvania Supreme Court recently discussed this exception, stating that such evidence is admissible where " 'such prior conviction or criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts'." *Commonwealth v. Brown*, 462 Pa. 578, 591, 342 A.2d 84, 90 (1975), *quoting Commonwealth v. Williams*, 307 Pa. 134, 148, 160 A. 602, 607 (1932).

In *Brown*, the Commonwealth's evidence showed that Brown had managed to avoid arrest after robbing a Philadelphia bar by entering a nearby building. Once inside the building, he broke into a second floor apartment occupied by a Mrs. Mitchell and her eleven year old son, Ardies. Brown forced the Mitchells to assist him while he wildly searched for money. During the search, Brown shot and killed the third floor tenant, one William Bogier. He then bound little Ardies, and proceeded to rape Mrs. Mitchell, after which he shot both the mother and her son. Neither died, however, and both testified at trial. Brown's girlfriend also testified at trial that Brown had given her a gun, declaring that he had just shot a little boy, a lady, and a man. Brown was arrested for the murder of Bogier and the related crimes, and was eventually convicted by a jury of murder in the first degree. On

appeal, he contended that the lower court erred in admitting evidence relating to the events which led up to the killing of Bogier, and also to the sequel to the killing. The court upheld the judgment of sentence, stating: "We believe that the evidence of the other events, sordid as they were, was admissible under this exception [same transaction exception] because they were part and parcel of the violent rampage which resulted in the death of William Bogier, they were necessary to complete the picture of the day in question, not to prove Brown's criminal disposition in general."

We find the rationale of *Brown* to be dispositive of the instant issue. The Commonwealth contends that evidence of the rape was admissible to show the circumstances of the alleged robbery. Under the Pennsylvania Crimes Code, "[a] person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury. . . ." 18 Pa. C.S. §3701 (a) (1) (ii). Here, the appellant, despite Miss Nichol's objections, drove his car to a point several blocks past her home. Once parked, he threatened his captive victim with an exposed knife, and then initiated a series of acts which began with rape and culminated immediately thereafter with theft. Although the rape preceded the theft, both were effected by the appellant's coercive use of the knife. Thus, not only was evidence of the rape relevant to a determination of the nature of the force employed by the appellant, but it also was properly admitted under the "same transaction" exception because it was an integral part of the immediate context of events surrounding the alleged robbery. By admitting this evidence, we do not weaken the underlying policy of protecting an accused against unfair prejudice. As the Pennsylvania Supreme Court stated in *Brown*: "No error was committed in permitting the full story . . . to be told." 462 Pa. at 591, 342 A.2d at 90.

The appellant also contends that the evidence adduced at trial was insufficient to sustain his conviction of theft.[10] This contention is without merit.

In determining whether evidence was sufficient to support the verdict of guilty, we view the Commonwealth's evidence as true and recognize that the prosecution is entitled to all reasonable inferences therefrom. *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973) ; *Commonwealth v. Portalatin,* 223 Pa. Superior Ct. 33, 297 A.2d 144 (1972). The instant record reveals that the appellant, knife in hand, raped Miss Nichols, ordered her from his car, snatched a package from her hands, and drove away with that package and two others belonging to her. The appellant was later discovered to have in his possession three articles of clothing which Miss Nichols identified as those which were taken from her.

While it is true that the Commonwealth must prove every essential element of a crime beyond a reasonable doubt, it is well established that the Commonwealth may sustain this burden by means of wholly circumstantial evidence. *Commonwealth v. Cimaszewski,* 447 Pa. 141, 288 A.2d 805 (1972) ; *Commonwealth v. James,* 230 Pa. Superior Ct. 186, 326 A.2d 548 (1974). However, a conviction based solely on mere suspicion or conjecture will not be sustained. *Commonwealth v. Bailey,* 448 Pa. 224, 292 A.2d 345 (1972). Here, the evidence, with the reasonable inferences that the fact finder could draw therefrom, provides far more than mere suspicion or conjecture that the appellant was guilty of theft.

The appellant further contends that the "Commonwealth never presented any evidence whatsoever to place the theft charge in any of the necessary categories of the

---

10. The Crimes Code provides: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. §3921(a).

Criminal Code." Apparently, the appellant believes that the indictment for robbery was not sufficiently specific to sustain a conviction of theft. This position is untenable. Under Section 3701 (a) (1) of the Crimes Code,[11] one must be "in the course of committing a theft" in order to commit a robbery. Furthermore, Section 3902, entitled "Consolidation of Theft Offenses," reads in pertinent part: "Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise."[12]

We have already determined that the Commonwealth presented evidence sufficient to sustain a conviction of theft under Section 3921 (a) of the Crimes Code, dealing with theft by unlawful taking of movable property.[13] Also, there is no evidence that the appellant ever requested a continuance or otherwise indicated that he needed more time to prepare a defense. We find, therefore, that an accused, absent a showing of surprise or lack of fair notice, may properly be convicted of theft, although not specifically charged with such, after being tried and acquitted of the charge of robbery.

Appellant's final contention is that he was denied his right to a public trial by the lower court, which ordered, despite appellant's objections, that the courtroom be cleared of spectators during the testimony of Miss Nichols, the alleged rape victim. We find no merit in this contention.

11. 18 Pa.C.S. §3701(a) (1).

12. 18 Pa.C.S. §3902.

13. *See* footnote 10, *supra,* and accompanying text.

The appellant bases his contention that he was denied his right to a public trial upon *United States v. Kobli,* 172 F.2d 919 (3d Cir. 1949), which held that the lower court, in a case where the defendant was accused of violating the Mann Act, committed reversible error when it cleared the courtroom of all spectators except the defendant, witnesses, jurors, counsel, and members of the press in an effort to protect the morals of a large number of youthful spectators. That court proclaimed: "[T]he Sixth Amendment precludes the general indiscriminate exclusion of the public from the trial of a criminal case in a federal court over the objection of the defendant and limits the trial judge to the exclusion of those persons or classes of persons only whose particular exclusion is justified by lack of space or for reasons particularly applicable to them." *Id.* at 923. We find that the ruling in *Kobli* is not applicable to the instant situation. Here, we are concerned with the sensibilities of a rape victim, publicly called upon to re-live verbally the frightening experiences of the night in question.[14] There was no rape involved in *Kobli*. Also, the lower court in *Kobli* excluded spectators from the courtroom for the entire duration of the trial. In the instant case, the courtroom was cleared only during the testimony of Miss Nichols. At all other times, the courtroom was open.

Although an accused has a constitutional right to a public trial, this right is not without limitation. *Commonwealth v. Burton,* 459 Pa. 550, 330 A.2d 833 (1974); *Commonwealth v. Principatti,* 260 Pa. 587, 104 A. 53 (1918). It is well-established, for example, that "the need to protect young complaining witnesses in rape cases against embarrassment, harassment and loss of reputation will suffice to invoke the shelter of limited privacy upon criminal proceedings." *Stamicarbon, N.V. v. Ameri-*

---

14. Although the appellant was not charged with rape, we have already concluded that evidence of the rape was admissible to depict completely the context in which the questioned actions occurred.

*can Cyanamid Co.,* 506 F.2d 532, 539-40 (2d Cir. 1974). Thus, the closing of the courtroom to spectators is a "frequent and accepted practice when the lurid details of such a crime [rape] must be related by a young lady."[15] *Harris v. Stephens,* 361 F.2d 888, 891 (8th Cir. 1966), *cert. denied,* 386 U.S. 964 (1967) (courtroom cleared during testimony of 23 year old rape victim). *See also Geise v. United States,* 262 F.2d 151 (9th Cir. 1958), *cert. denied,* 361 U.S. 842 (1959); *Melanson v. O'Brien,* 191 F.2d 963 (1st Cir. 1951).

We believe that the above considerations are applicable here where Miss Nichols, the 31 year old mother of two young children, might be subject to embarrassment or loss of reputation were her testimony allowed to be made public. In fact, the lower court, in its opinion, stated that it could "sense the timidity and embarrassment by physical observation of the Prosecutrix." Certainly, it was not unreasonable for the lower court to determine that Miss Nichols' testimony might be severely hampered, if not actually distorted, if the courtroom was not cleared of spectators. We find that the lower court did not abuse its discretion by excluding spectators during Miss Nichols' testimony.

We affirm the judgment of sentence.

---

15. Although the age and experience of the victim are important factors which must be considered by the lower court in its determination of whether a particular witness will be hampered in testifying by the presence of the general public, we note that these factors do not, by themselves, control its decision.