385 A.2d 405

**COMMONWEALTH of Pennsylvania**

**v.**

**Clarence Harry SEIGRIST, Appellant.**

Superior Court of Pennsylvania.

Submitted March 14, 1977.

Decided April 13, 1978.

412

Jacobs, President Judge, dissented.

Dusan Bratic, Assistant Public Defender, Harrisburg, for appellant.

Reid H. Weingarten, Deputy District Attorney, Harrisburg, and LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

414

PRICE, Judge:

Appellant Clarence Harry Seigrist was convicted of rape [1] and involuntary deviate sexual intercourse [2] after a non-jury trial on January 19, 1976. [3] Written boiler-plate post-verdict motions were denied, and appellant was sentenced to serve five to twenty years imprisonment for rape and to pay the costs of prosecution for involuntary deviate sexual intercourse.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the following was established at trial. On August 10, 1975, at approximately 9:30 p. m., appellant, armed with a knife, entered the prosecutrix' house. After threatening to kill the prosecutrix if she made any noise, appellant forced the young lady to accompany him to various secluded areas of the neighborhood and to submit to the complained of acts. Several hours later, the two returned to the house. Appellant fell asleep on the living room floor near the door. At approximately 6 a. m. appellant awoke, and after embracing the prosecutrix, he left the house.

The prosecutrix telephoned her sister who suggested that the police be summoned. The prosecutrix was reluctant to heed this advice because she feared the social consequences of admitting that she was a rape victim. Finally, after discussing the matter with her brother, the prosecutrix, at approximately 12 p. m., reported the incident to the police.

Sergeant Charles Schell, the investigating officer, testified that when he met the prosecutrix at 12:50 p. m., she was scared and in a state of shock. She had brushburns and fingernail scratch marks on her face, neck and arm. The assailant was described as a "[c]aucasian male, age thirty-seven, . . . about medium build, five nine, five ten in height, long dark hair coming down not quite to the ear or in

1. 18 Pa.C.S. § 3121.

2. 18 Pa.C.S. § 3123.

3. Appellant was also indicted for kidnapping, but he was acquitted of this offense.

around the ear lobe and narrow, boney face, a crooked nose in an upslant and she called them squeeky eyes, partially closed, constant staring as if in a daze . . . and the main thing she stated was that his little finger on his right hand was deformed and either fully or partially the finger next to it was missing." (NT 51). After checking with other sources, Sergeant Schell learned that appellant, who fit this description, was staying with friends at the residence immediately to the south of the prosecutrix'. Appellant was arrested at the house the day after the incident. At trial, appellant was positively identified by the prosecutrix as the attacker.

On this appeal several instances of alleged trial error are asserted. None of these errors were preserved by objection at trial or inclusion in post-trial motions.[4] The merits are therefore technically waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Smith*, 452 Pa. 1, 304 A.2d 456 (1973); *Commonwealth v. Webb*, 237 Pa.Super. 131, 346 A.2d 574 (1975). Appellant, who is currently represented by a member of the public defender's association different from the one who represented him during the trial and post-trial portions of the case, now contends that trial counsel was ineffective for failing to object to each of the alleged errors. It is in this context that we will review these claims.

Several of the issues presented on this appeal relate to the introduction of evidence tending to demonstrate that appellant had a prior criminal record. In order to expedite discussion of the issues it is necessary to set forth the circumstances surrounding the trial incidents.

4. Appellant contends that trial counsel was not required to object to the alleged prejudicial answers which were responsive to questions propounded by the court because in such a case, an objection would be a futile gesture. We disagree. It has long been the law of this Commonwealth that a party must object to a judge's participation in the questioning if an alleged error arising from that participation is to be preserved for appellate review. *E. g., Commonwealth v. Del Giorno*, 303 Pa. 509, 154 A. 786 (1931).

During the assault, appellant informed the prosecutrix that he had been in jail on many occasions. This statement was not elicited from the prosecutrix. When she was testifying, however, the judge asked several questions and the following ensued:

"THE COURT: What was he talking to you about?

A. Himself.

THE COURT: What about?

A. His girl friend, that she had left him and she was on drugs and his stepfather died.

THE COURT: That was it?

A. No.

MR. WEINGARTEN [Assistant District Attorney]: May we approach the Bench, Your Honor, a second at this point?

THE COURT: Yes.

(Whereupon, discussion was had off the record at sidebar)." (NT 34).

Appellate counsel contends that the assistant district attorney indicated that further conversations between appellant and the prosecutrix dealt with appellant's prior criminal record. The Commonwealth's attorney, on the other hand, contends that he merely informed the court that "it was getting into an area of potential prejudice to the defendant that was not critical to the case." (Commonwealth's brief at 7).

The second incident relevant to this appeal occurred during cross-examination of Sergeant Schell by defense counsel. This examination consisted, in part, of the following:

"BY MR. BRATIC [Defense counsel]:

Q. How did you come up with the name of Clarence Seigrist?

MR. WEINGARTEN: Your Honor, at this time I would repeat what I said at sidebar.

THE COURT: It is asked by defense, sir. Proceed.

A. I came up with the name of Clarence Seigrist when I called Sergeant Smith of the Lebanon City Police Department.

BY MR. BRATIC:

Q. Did you have some information that Mr. Seigrist might have been from Lebanon?

A. Based on what the victim herself stated to this gentleman that the assailant is alleged to have made to her.

THE COURT: In other words, you are saying that while the assailant was with the young lady in question, he is supposed to have made certain statements to her which she related to you and which aided you in locating the defendant?

A. Correct, Sir.

THE COURT: All right. Go ahead." (NT 55–56). At this point appellant concedes that Sergeant Schell's answer to defense counsel's question indicated that appellant had a police record and that the answer was a proper, nonobjectionable response. Appellate counsel does not contend that trial counsel was ineffective in asking this question.

The third incident also occurred during the examination of Sergeant Schell by the court.

"BY THE COURT:

Q. Sergeant, from your investigation, what was the defendant doing at this address you gave at 22 North Walker Avenue?

A. He was staying with a Charles Ditzler family.

        .        .        .        .        .

Q. Did your investigation indicate what connection Clarence Seigrist had with the Ditzler family?

A. Yes, sir.

Q. And?

A. They were friends and *ex-con buddies*."

(NT 58) (emphasis added).

▪ The initial factor in determining if counsel's assistance was constitutionally effective involves a consideration of whether the claims which prior counsel is charged with failing to pursue had some reasonable basis. *Common-*

*wealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). It is well established that counsel cannot be found ineffective for failing to assert a baseless claim. *Commonwealth v. Nole,* 461 Pa. 314, 336 A.2d 302 (1975); *Commonwealth v. Goosby,* 461 Pa. 229, 336 A.2d 260 (1975). As applied to the instant case, the question is whether the court would have been required to grant a mistrial if objections had been made and a mistrial had been requested.[5]

> "The decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. . . . This does not mean, however, that a prosecutor will be permitted to place highly prejudicial information before the trier of fact. There are times when evidence is so prejudicial that we cannot assume that the trier of fact will be able to put the evidence aside and arrive at an impartial adjudication. On those occasions, a declaration of mistrial is required."
> *Commonwealth v. Conti,* 236 Pa.Super. 488, 495, 345 A.2d 238, 242 (1975) (citations omitted).

In general, the same rules of evidence should be used in jury and non-jury trials. *Commonwealth v. Conti, supra.* Moreover, it is generally accepted that a prior criminal conviction is inadmissible, except in certain limited situations not relevant to the instant case, to prove that a defendant is guilty of the crime for which he is on trial. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). The courts of this

---

5. Despite appellant's contrary protestations, our independent review of the record has revealed no pattern of questioning by the court which demonstrated any prejudice toward the defendant. A trial judge, particularly in a non-jury case, has the right, and perhaps the duty, to question witnesses in order to clarify the issues and the testimony. *Commonwealth v. Morin,* 237 Pa.Super. 533, 352 A.2d 189 (1975); *Commonwealth v. Lanza,* 228 Pa.Super. 300, 323 A.2d 178 (1974). All three incidents resulted from questions by the court designed to clarify the issues or a prior answer of the witness. The statement by Sergeant Schell that appellant and Mr. Ditzler were "ex-con buddies" was clearly unnecessary on his part but there is no intimation that the court was searching for this answer. Finally, when the prosecutrix testified, the court examined her just as vigorously to determine why she did not attempt to leave the house when appellant fell asleep and why she waited until noon of the next day to report the rape to the police.

Commonwealth have, therefore, reversed convictions where there has been a reference at trial to mug shots, or other direct or indirect evidence of a prior conviction. *Commonwealth v. Conti, supra; Commonwealth v. Rivers*, 238 Pa.Super. 319, 357 A.2d 553 (1976). Our cases, however, have not established a per se rule requiring a new trial for every prejudicial reference of this type. The prejudicial effect may be overcome by cautionary instructions, *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977), or an appellate court may find that any error was harmless. *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976); *Commonwealth v. Jones*, 233 Pa.Super. 52, 335 A.2d 444 (1975). The fact that a particular case was tried non-jury is also relevant in determining whether a mistrial should have been granted, although this factor must be carefully scrutinized by the appellate court. *Commonwealth v. Williamson*, 243 Pa.Super. 139, 364 A.2d 488 (1976); *Commonwealth v. Conti, supra; Commonwealth v. White*, 227 Pa.Super. 498, 323 A.2d 238 (1974).

Assuming, in the instant case, that during the unrecorded colloquy, the Commonwealth, as it contends, merely informed the judge that his questions were verging on prejudicial matters not necessary to the Commonwealth's case, we have no hesitancy in concluding that the isolated reference to "ex-con" buddies was at most harmless error. First, the incident occurred only after defense counsel, through his questioning, had already introduced evidence indicating that appellant had a criminal record.[6] If the facts are as the Commonwealth contends, it cannot be successfully contended that any prior prejudicial statements induced defense counsel's questions. *See Commonwealth v. Jones, supra.* The prejudicial effect of Sergeant Schell's reference would thus be reduced or eliminated. *See Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974). Moreover, the evidence against the appellant was very strong, if not over-

6. As previously noted, appellate counsel concedes in his brief that the second quoted incident had this effect, and in addition, appellate counsel does not contend that trial counsel was ineffective for pursuing the line of questioning.

whelming. These factors, appearing in a non-jury trial establish that any error was, at most, harmless.

The problem in this case, as in most cases where ineffective assistance of counsel is alleged on direct appeal, is that we have no record of what transpired during the unrecorded colloquy. Appellant contends that the court was informed that the defendant had a prior criminal record. If the facts are as appellant contends, the question becomes much closer. Although we could not, at this point, say the claim would mandate a new trial, neither could we hold that there was no basis for the claim. It is therefore necessary to vacate the judgment of sentence and remand the case for an evidentiary hearing to determine what transpired during the unrecorded colloquy. *See generally Commonwealth v. Davis*, 248 Pa.Super. 446, 375 A.2d 181 (1977). If upon remand the lower court finds that the Commonwealth's version of the facts is true, the judgment of sentence shall be reinstated. If appellant's version of the facts is found to be true, the hearing court must determine, in accordance with *Commonwealth v. Hubbard, supra*, and *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975), if counsel's decision not to object had any reasonable basis designed to effectuate his client's interests. If no such basis is found, appellant must be afforded a new trial. If a reasonable basis is found, the judgment of sentence shall be affirmed.

Appellant also contends that trial counsel was ineffective when he failed to object during the testimony of Dr. Darnell Jones, the prosecutrix' treating physician. Dr. Jones testified in part as follows:

"[BY MR. WEINGARTEN]

Q. Did you have a conversation with [the prosecutrix] prior to examination?

.  .  .  .  .

A. I asked her for information regarding the situation that brought her in here. Do you want me to go in depth of the information I obtained from her.

THE COURT: Yes please. Do you have notes you want to refer to?

A. If you would like I will read verbatim.

THE COURT: You may, sir. I would like your history and your findings.

. . . . .

A. This is my own report in my own writing . . . . [A]t 10 o'clock p. m. an unidentified approximately thirty-five, thirty-seven year old white male entered [the prosecutrix'] house, threatened her with a knife, told the patient he *had been in jail many times*, lived in Lebanon and had jumped parole, took her out of the house by pulling on her lower jaw to a yard several blocks up the street behind some bushes . . . and forcibly had vaginal and anal intercourse with her." (NT 73–74) (emphasis added).

Appellant's sole contention is that the italicized portion of the above quoted passage constituted inadmissible hearsay which was prejudicial to the appellant. Appellant correctly notes that the prosecutrix could have testified to what appellant told her, not to prove the truth of the assertion that appellant had been in jail many times, but rather to prove the fact of the assertion which was clearly relevant to the question of lack of consent. When testified to by Dr. Jones, the statement was hearsay introduced to prove what the prosecutrix told him. Any error, however, was harmless in view of the other overwhelming evidence of force or lack of consent. *See generally Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Thomas*, 443 Pa. 234, 279 A.2d 20 (1971). This is particularly so in light of Dr. Jones' remaining testimony indicating that appellant threatened her with a knife and had jumped parole.[7]

7. Appellant also contends that trial counsel was ineffective for failing to object on the grounds of improper opinion evidence to Dr. Jones' testimony that the results of the physical examination would "fit very nicely" the prosecutrix' charges. This contention is without merit. Dr. Jones qualified as an expert witness and no objection was raised to his qualifications. Appellate counsel does not, nor could he, contend that trial counsel was ineffective in this regard. Moreover, Dr. Jones ventured no opinion on the ultimate issue of whether the prosecutrix had been raped. He merely stated that the physical facts he observed were consistent with the prosecutrix' allegations.

■ Appellant finally contends that the Commonwealth did not negate appellant's defense of no intent due to intoxication. The prosecutrix testified that appellant smelled slightly of alcohol when he entered the house, but he did not appear drunk, did not consume alcohol in her presence and had control of his faculties. This evidence was sufficient.

The judgment of sentence is vacated and the case is remanded for further proceedings consistent with this opinion.

JACOBS, President Judge, dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.