464 A.2d 341

**COMMONWEALTH of Pennsylvania**

v.

**Daryl Nason CLAYPOOL, Appellant.**

Superior Court of Pennsylvania.

Argued September 30, 1981.

Filed July 15, 1983.

Reargument Denied Sept. 16, 1983.

Petition for Allowance of Appeal Granted Feb. 2, 1984.

Frances S. Palmer, Hermitage, for appellant.

Charles S. Hersh, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before CAVANAUGH, MONTEMURO and VAN der VOORT, JJ.

MONTEMURO, Judge:

This is an appeal from the judgment of sentence imposed on the appellant, Daryl Nason Claypool, for rape,[1] involuntary deviate sexual intercourse[2] and simple assault.[3] Appellant contends, *inter alia*, that the trial court erred in allowing the Commonwealth to introduce evidence of appellant's prior criminal conviction for rape.[4] The record before

1. 18 Pa.C.S.A. § 3121.

2. 18 Pa.C.S.A. § 3123.

3. 18 Pa.C.S.A. § 2701.

4. Appellant's other contentions which are supernumerary in light of our decision are: (1) that trial court errcd in refusing the appellant's requested points for charge nos. 9 and 10; (2) the trial court erred in denying appellant's motion for mistrial after members of the jury saw the appellant in handcuffs in the custody of the sheriff; (3) that trial

us supports the appellant's contention, and accordingly, we vacate the judgment of sentence and remand the case for a new trial.

The appellant's contention is centered around the admission of evidence concerning a prior criminal conviction for rape which was alluded to by the prosecutor in his opening statement, brought out in the testimony of the victim and further amplified in the examination and cross-examination of the appellant, and through the testimony of the appellant's wife as a rebuttal witness for the prosecution.

The facts giving rise to this matter occurred in the early morning hours of November 7, 1979. The appellant, a long distance truck driver, had been in Baltimore, Maryland picking up a load of steel. His wife, Patricia Claypool, was in the hospital undergoing minor surgery. Mrs. Claypool's sister, Susan Durney, had agreed to babysit for the Claypool children, Nason and Amy, ages 3 and 1 and ½ respectively. Mrs. Durney and the children were alone in the Claypool residence on the night and early morning in question.

At about 1:30 A.M., the appellant arrived home unexpectedly, pounded on the door, and was admitted by Mrs. Durney, who was wearing a long-sleeved flannel nightgown. The appellant and Mrs. Durney talked briefly while the appellant drank a beer from a six-pack he had purchased earlier.[5] Mrs. Durney then went upstairs to the bedroom in which the Claypool children were sleeping.

Shortly thereafter, she heard her name being called and went to the doorway of her room. The appellant was standing in the doorway of the other bedroom attired only in a T-shirt and briefs and was holding a gun; either a shot gun or a rifle. He pointed the gun toward her and told her to come into the bedroom. At first, she refused, but he repeated his demand and she entered the bedroom. Mrs.

judge erred in refusing to recuse himself; and (4) the trial court erred in his recollection of testimony in making the charge to the jury.

5. The appellant testified that he had drunk eight or nine beers during the course of the night.

Durney repeatedly asked the appellant to put the gun down because she was scared, but the appellant refused and said to her:

"... better not try to get away or to scream or holler ... he would shoot me and anybody else who got in his way and hopefully that if the police came he would get killed too because he would never go to jail again."

Mrs. Durney testified that the appellant told her he had been in jail, a fact of which she was aware. He also told her that he had been in jail for rape, a fact of which she was not aware. She recounted appellant's words:

"He told me that him and another fellow were at his cousin's house and they had been drinking and they tied up his cousin and then they took the cousin's wife upstairs and that he was in jail for that."

She then testified that she was "scared to death because then I knew that that's what he was going to do to me." She also testified that the appellant made various other threats,[6] grabbed her wrists, threw her on the bed, pulled off her nightgown and spread her legs, leaving bruises. Appellant proceeded to engage in several acts of sexual intercourse with the victim, both vaginal and oral.

The appellant admitted having sexual relations with Mrs. Durney but claimed the acts were entirely consensual. He acknowledged having the gun while standing in the hallway, but claimed that he had taken it out while contemplating suicide and had forgotten he was holding it when he called to his sister-in-law.

■ Our scope of review in this matter is the determination of whether the trial court abused its discretion in

6. Mrs. Durney testified that the appellant said to her:
"At the time he said that I would have sex with him willingly or I would be the one that got hurt."
... and:
"Well, he told me that I better do it and he said I better not scream and holler because ever since he's been in jail any loud noise like that, if I screamed it would make him crazy."
... and:
"F____, I told you to f____."

allowing the admission of evidence of appellant's prior rape conviction. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977). The trial court's stated purpose in allowing the introduction of the evidence of the prior conviction was "to show why the will of Susan Durney was overcome to make the act of intercourse and possibly later involuntary deviate sexual relations to be without consent."

In *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 385 A.2d 405 (1978), the trial court, sitting without a jury, allowed the treating physician of a rape victim to testify from a written report he had made of the incident. The report stated various attendant facts, including a reported statement by the defendant in which he *"told the patient he had been in jail many times,* lived in Lebanon, *and jumped parole." Id.,* 253 Pa.Superior Ct. at 421, 385 A.2d at 410. This court upheld the lower court's holding that the testimony was admissible, stating:

> Appellant's sole contention is that the italicized portion of the above quoted passage constituted inadmissible hearsay which was prejudicial to the appellant. Appellant correctly notes that the prosecutrix could have testified to what the appellant told her, not to prove the truth of the assertion that the appellant had been in jail many times, but rather to prove the fact of the assertion which was clearly relevant to the question of lack of consent.

*Id.,* 253 Pa.Superior Ct. at 421, 385 A.2d at 410. In *Commonwealth v. Kjersgaard*, 276 Pa.Super. 368, 371, 419 A.2d 502, 503 (1980), the victim of a rape testified that the defendant said to her "that fifteen other young women had been murdered because they refused his order to undress." *Id.,* 276 Pa.Superior Ct. at 371, 419 A.2d at 504. The court, relying on *Seigrist, supra,* ruled that the defendant's "admissions" were cogent evidence that his victims submitted only upon the threat of injury or death." *Id.,* 276 Pa.Superior Ct. at 376, 419 A.2d at 506.

While these cases would allow testimony of prior criminal acts as relevant on the issue of the victim's consent, we do not think they control the present case.

A defendant's statements regarding his prior criminal acts used as threats to overcome the will of a victim may be used as evidence in the proper circumstances. However, countervailing principles inherent in our system of jurisprudence militate against the use of evidence which might tend to inflame or prejudice the trier of fact. The general prohibition against admission of evidence of a defendant's prior criminal acts is one manifestation of the judicial recognition of these principles:

> One of our most fundamental and prized principles in the administration of criminal law is that a district crime, unless under special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that a person has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant. *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955); *Commonwealth v. Booth*, 291 Pa.Super. 278, 287, 435 A.2d 1220, 1225 (1981).

The exceptions under which evidence of prior criminal acts is admissible are well established in the decisions of our courts. They include those cases where the evidence is introduced to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the other; or (5) the identity of the person charged with the commission of the crime on trial. *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Booth, supra.* To this list is sometimes added an exception wherein the evidence is part of the *res gestae* of the charged offense. That is to say that "such evidence is admissible where 'such prior conviction or criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the material development of facts.'" *Commonwealth v. Brown*, 462 Pa. 578,

591, 342 A.2d 84, 90 (1975) (quoting *Commonwealth v. Williams*, 307 Pa. 134, 148, 160 A. 602, 607 (1932)); *Commonwealth v. Stufflet*, 276 Pa.Super. 120, 419 A.2d 124–25 (1980).

Our Supreme Court, in *Commonwealth v. Ulatoski, supra*, has established an additional barrier to the admission of prior crimes evidence even where its relevance has been established by its inclusion within one of the above exceptions. The Court determined that a trial court should exercise its discretion:

> to exclude the other-crimes evidence, *even when it has substantial independent relevancy,* if in [its] judgment its probative value for this purpose is outweighed by the danger that it will stir such person in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. [McCormick, Evidence, § 190 at 453–454] (Emphasis added).

Id. 472 Pa. at 63 n. 11, 371 A.2d at 191 n. 11. This court has set forth the factors to be considered in this balancing tests as:

> ... on the one side, the actual need for the other crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of their other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmasting hostility.

*Commonwealth v. Hude*, 256 Pa.Super. 439, 445, 390 A.2d 183, 185–86 (1978) (quoting McCormick, Evidence, § 190 at 453). See also *Commonwealth v. King*, 290 Pa.Super. 563, 575, 434 A.2d 1294, 1300 (1981); *Commonwealth v. Hawkins*, 295 Pa.Super. 429, 437–38, 441 A.2d 1308, 1312 (1982).

Applying this two-prong test to the present case, we find that the evidence introduced by the Commonwealth was clearly relevant on the question of the lack of consent

of the victim.[7] *Commonwealth v. Seigrist, supra; Commonwealth v. Kjersgaard, supra.* However, the prejudice engendered by it exceeds its probative value and therefore the trial court abused its discretion in admitting the evidence.[8]

The Commonwealth had more than sufficient evidence without touching upon the appellant's prior conviction, to establish the victim's lack of consent; i.e. the appellant pointing a rifle or shotgun at the victim, the repeated threats, the appellant grabbing the wrists of the victim, the appellant throwing the victim on the bed, the appellant causing bruises on the victim's thighs by forcefully spreading the victim's legs. All of these facts clearly demonstrate the lack of consent of the victim herein and make the need for the prior conviction evidence slight. Furthermore, we find that, although the evidence of appellant's prior conviction was convincing,[9] it added little in light of the victim's other testimony. On the other hand, the prejudice created by the evidence was extensive. Such evidence predisposes the minds of the jurors to believe the accused guilty, and thus effectively strips him of the presumption of innocence. *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048 (1978). "Evidence of prior criminal activity is probably only

7. The respective courts in *Seigrist* and *Kjersgaard* do not specify which of the enumerated exceptions includes these statements. In the present case, the trial court, in its opinion, concluded that none of the exceptions were applicable; it relied strictly on *Seigrist* and *Kjersgaard* to justify the introduction of the prior conviction testimony. We cannot accept the lower court's conclusion inasmuch as a prerequisite to the introduction of such testimony is that it falls within the parameters of an exception to the general exclusionary rule. We find the testimony is evidence of the appellant's intent; i.e. relevant to prove intent to have sexual intercourse, regardless of the consent of the victim. This is consistent with case law setting forth the necessary elements of the crime of rape. 18 Pa.C.S.A. § 3121. *Commonwealth v. Rough*, 275 Pa.Super. 50, 418 A.2d 605 (1980).

8. The dissenting opinion would not avail itself of the second prong of the test used herein because it was not used in *Kjersgaard, supra,* or *Seigrist, supra.* We, nevertheless, find ourselves bound by the Supreme Court's decision in *Commonwealth v. Ulatuski, supra.*

9. The appellant admitted the prior rape conviction on direct examination while testifying.

equalled by a confession in its prejudicial impact upon a jury." *Id.*, 480 Pa. at 606, 391 A.2d at 1050–1051. See also *Commonwealth v. Laughman*, 306 Pa.Super. 269, 452 A.2d 548 (1982).

In the instant case, the jury was virtually assaulted with references to the appellant's prior rape conviction throughout the trial. The incident was initially alluded to in the opening remarks of the prosecution; it was elicited, *in detail*, in the testimony of the victim; it was further reiterated when the appellant was forced, due to the pre-trial ruling,[10] to admit the incident and when he was cross-examined at length concerning it; and it was finally mentioned in the rebuttal testimony of appellant's wife. It is the frequency with which the evidence is repeated, as well as the elaboration of detail which distinguishes this case from *Seigrist* and *Kjersgaard*. The sheer number of references and the elicitation of specific details of the offense from the victim by the prosecution could have no other effect but to unduly prejudice the jury.

The prejudice thus created could not be obviated even by the excellent cautionary instruction given by the trial court judge.[11] *Commonwealth v. Washington*, 488 Pa. 133, 411

**10.** The lower court ruled in a pre-trial hearing that the victim's testimony regarding appellant's statement was admissible. When the testimony concerning the statement was presented, the appellant was virtually forced to take the stand to mitigate the prejudicial impact by means of some explanation. The dissent finds this circumstance to be of little consequence, stating, "[A]ppellant's tactical choice was to bare his record to the jury. He may not now complain that such tactic did not prove to be fruitful." This overlooks the primary evil which the rule prohibiting other crimes testimony seeks to avoid. By requiring a defendant to take the stand in order to "attempt to explain the prior incident in an attempt to dissuade the jury from holding it against him," the defendant is being tried for the prior, as well as the present, criminal offense. *Commonwealth v. Burdell*, supra.

**11.** During the course of the testimony of Susan Durney, the trial court informed the jury:

In the testimony of the witness presently on the stand Susan Durney, yesterday it was stated that before the first act of rape or alleged rape the defendant informed her that he had been in jail previously for an alleged rape. According to the prosecutrix Mrs. Durney, the defendant told her the incident involved the wife of a

cousin of the defendant. I am not going to attempt to recite the details of what Mrs. Durney testified to befoore [sic] because it's for the jury to determine that. however, this testimony if it be accepted by the jury, that is to be believed, must be used for the sole purpose for which it was offered. That was to show why the will of Susan Durney was overcome to make the act of intercourse and possibly later involuntary deviate sexual relations to be without her consent. You will recall that Mrs. Durney testified to other causes in addition to the information given to her by the defendant concerning that subject but that was one of them.

The general rule is that evidence of prior criminal acts cannot be considered by a jury in determining the guilt for the act of which that defendant is presently being tried. On the other hand, although this evidence was generally inadmissible it was permitted to be received because it may tend to prove, if believed, one of the necessary elements that the Commonwealth must establish beyond a reasonable doubt for both the offense of rape and the offense of involuntary deviate sexual relations. That is, taking the act that it is claimed or acts that are claimed to be performed as to whether or not the will of the defendant [sic] was overcome. It is necessary that the Commonwealth establish beyond a reasonable doubt that there was forcible compulsion or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. That's the language of the statute both as to rape and as to involuntary deviate sexual relations. Therefore, the testimony of the defendant's alleged prior involvement in a rape is to be considered only for what effect it had on a person of reasonable resolution to determine whether or not that by itself or with other acts, the pointing of the gun if that occurred, the physical force if that occurred, or whatever it was that overcame her resistance, if it did, would have done so as to a person of reasonable resolution. That's the reason and the only reason that that testimony was received and it must be considered by the jury in that limited context. With that we will continue.

In the charge, the court informed the jury:

I would like to also hastily tell you that which I told you before and that is the fact that he had been convicted of rape previously or at least pled guilty and had served time cannot be used in anyway [sic] by you to conclude that he therefore raped this girl. That testimony was received only to show why the will of the victim was overcome, if it was. The thought being that if a person puts a gun on you and says, 'Get in the room here. I want to commit a sexual act upon you,' you may move but if that person also says to you, 'I have committed rape before and I've served time in jail on that and I'm not going to let anybody take me in the event there's interference and I'll use this gun.' [sic] The combination of those elements may add to the reason why the will of the victim was overcome, if it was, if that was said, and that testimony can be received only for that limited purpose. You can't say because he did it before he'll do it now at all, but rather the impact that that testimony had to cause a person of reasonable resolution to have their will overcome if they were in that situation.

A.2d 490 (1979); *Commonwealth v. Spruill, supra; Commonwealth v. Williams*, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977). Even though the trial judge demonstrated his concern for the rights of the appellant in attempting to obviate the prejudice of the contested evidence, neither the timing, nor the substance of the instructions could have cleansed the collective minds of the jurors of that fact that this appellant was a convicted rapist.

Finally, we must determine whether the trial court's allowance of the introduction of this evidence, though error, was harmless error. We conclude that it was not. See *Commonwealth v. Brunner and Murphy*, 305 Pa.Super. 441, 451 A.2d 714 (1982). In light of the numerous, repeated and detailed references to the prior rape conviction, we find that the jury would have been greatly influenced by the improper testimony; past any point which we could justly allow.[12]

We wish to impose one caveat regarding our holding in this case. Our decision is one which is limited to the facts of this case. We could not, nor do we wish to, overrule the prior decisions of this court in *Seigrist* and *Kjersgaard*. However, we must distinguish these cases on the bases of the criteria which we have stated throughout this opinion: (1) the repeated, numerous and detailed references to the prior conviction, and (2) the overwhelming evidence at the command of the Commonwealth. We believe that the evi-

Further:
He admitted that he did plead guilty in 1971, February 2nd to the crime of rape. The argument of the defendant is well taken that he served his time for that crime and he should not be punished twice for the same crime. And I say to you again that that evidence was not received and cannot be used by you for the purpose of showing because he allegedly raped one time, he raped a second time, but only for the limited purpose of whether or not the will of Susan Durney was overcome by that information along with the other matters that allegedly occurred.

12. See also *Commonwealth v. Turner*, 499 Pa. 579, 584, 454 A.2d 537, 540 (1982), in which the court said, "Unless the court determines that the error could not have contributed to the verdict, the 'reasonable possibility' that the error did contribute to the verdict negates any notion of harmlessness."

dence in this case was, on balance, far too prejudicial to be admitted.

Accordingly, we find that the trial court abused its discretion in allowing the repeated references to evidence regarding appellant's prior conviction for rape to the appellant's ultimate and undue prejudice and therefore order that the judgment of sentence be vacated and the appellant be granted a new trial.

VAN der VOORT, J., files a dissenting opinion.

VAN der VOORT, Judge, dissenting:

The majority grants a new trial to a convicted rapist notwithstanding the fact that the Commonwealth's proof of the crime was overwhelming. I cannot subscribe to such reasoning and therefore I must respectfully dissent. Before expounding further upon my divergence with the majority, I must first note that I have reviewed appellant's other contentions (See Majority Opinion, p. 321–22, n. 4) and find them to be without merit.

The majority finds that evidence of appellant's prior rape conviction, as voiced by the appellant himself to intimidate the victim into submission, while relevant, was nonetheless inadmissible. Such holding is grounded upon language to the effect that when such evidence of a prior conviction is admissible under one of the five exceptions to the general rule, the court must then balance the probative value against the prejudice to a defendant. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Booth*, 291 Pa.Superior Ct. 278, 435 A.2d 1220 (1981). The exceptions referred to are (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design; and (5) the identity of the person charged. To this list, the majority would add an "exception" of the *res gestae* of the crime charged. The majority therefore requires balancing of the prosecution's need against the prejudice to the appellant.

I believe such balancing is improper in the current circumstances. The majority opinion refers to three cases which hold that prior criminal acts or statements referring thereto made or performed in the "same transaction" or *"res gestae"* are admissible. *Commonwealth v. Brown*, 462 Pa. 578, 590–91, 342 A.2d 84, 90 (1975); *Commonwealth v. Kjersgaard*, 276 Pa.Superior Ct. 368, 375, 419 A.2d 502, 506 (1980) and *Commonwealth v. Seigrist*, 253 Pa.Superior Ct. 411, 421, 385 A.2d 405, 410 (1978). Those courts all found similar crimes or admissions of crimes were properly admitted because "sordid as they were, [the evidence] was admissible ... because they were part and parcel of the violent rampage" *Brown;* "were cogent evidence that the victims submitted only upon the threat of injury or death", *Kjersgaard;* and such evidence was proper "not to prove the truth of the assertion ... but rather to prove the fact of the assertion which was clearly relevant to the question of lack of consent." *Seigrist.* The majority then attempts to distinguish the current case by applying the balancing test and finding that the numerous references and the overwhelming evidence of guilt requires that the evidence be withheld from the fact finder.

I have reviewed six cases which specifically address the issue whether "res gestae" or "same transaction" evidence referring to prior criminal conduct is admissible: *Brown,* supra; *Commonwealth v. Ross*, 413 Pa. 35, 195 A.2d 81 (1963); *Kjersgaard,* supra; *Commonwealth v. Stufflet*, 276 Pa.Superior Ct. 120, 419 A.2d 124 (1980); *Seigrist,* supra; and *Commonwealth v. Stevens*, 237 Pa.Superior Ct. 457, 352 A.2d 509 (1975). All six of the above cases held that such was properly admitted under the facts of that case. Only one of these cases, *Stufflet,* mentioned the above balancing test. The majority here attempts to apply the balancing test as a matter of hind sight to *Kjersgaard* and *Seigrist* in an attempt to distinguish those two cases from the current situation by finding that here the frequency, as well as the elaboration were greater. I cannot join in such

approach; since there is nothing in the opinions referring to the balancing test, one should not assume such was applied.

At the same time, I must not ignore what appears on the surface to be a conflict between *Stufflet* and *Stevens*. *Stevens* held that "[b]y admitting this evidence, we do not weaken the underlying policy of protecting an accused against unfair prejudice. As ... stated in *Brown:* 'No error was committed in permitting the full story ... to be told' 462 Pa. at 591 [342 A.2d 84]." 237 Pa.Superior Ct. at 464 [352 A.2d 509]. *Stufflet,* held that "[t]he evidence was needed to complete the story of the crime. *Moreover,* the prejudicial effect was not so prejudicial as [t]hat ... permitted ... in *Stevens."* 276 Pa.Superior Ct. at 125, 419 A.2d 124 (Emphasis supplied). The keyword in Judge Hoffman's opinion in *Stevens* is "moreover." Webster's New Collegiate Dictionary (1980) defines moreover as: in addition to what has been said; *besides.* In other words when read in the context of *Stevens,* the holding was that the "whole story" is admissible; *besides,* even if it was not the balance would fall in favor of the Commonwealth.

The balancing test which the majority applies here was the state of the law at the time of *Kjersgaard* (1980) and *Seigrist* (1978); *Ulatoski* upon which the majority relies was decided in 1977. Therefore, we must assume that this court was aware of such but did not utilize it when relating the "whole story." The other exceptions all deal with evidence which while relevant, is removed or remote in time, place, or logical connection from the crime charged. The "whole story" is not so removed.

Additionally, I find appellant's admission of prior criminal activity was more relevant to the charge on trial than that in *Brown.* There the Commonwealth presented testimony of a rampage involving numerous crimes, all admissible to complete the story. In the current case the prior crime not only completes the story but is material to the lack of consent.

The majority's emphasis upon the repetition and detail of the testimony is misplaced. The numerous references

which are of concern to the majority are for the most part the result of a tactical decision made by the defense. Any opening comment by the prosecutor was a proper summary of the incident of rape. Appellant's own testimony both on direct and cross examination was a rational tactical approach. He could either sit quiet as to the prior rape and request an instruction to the effect that the admission was offered not for the truth of the matter but to show the fact it was said, or he could attempt to explain the prior incident in an attempt to dissuade the jury from holding it against him. Appellant's tactical choice was to bare his record to the jury. He may not now complain that such tactic did not prove to be fruitful.

Furthermore, while I find no error, even if error did exist it was harmless beyond a reasonable doubt. While the majority would exclude the testimony in question because the Commonwealth's case was overwhelming, *Seigrist* found any error in the admission of similar evidence, was harmless beyond a reasonable doubt "in view of the other overwhelming evidence of force or lack of consent." 253 Pa.Superior Ct. at 421, 385 A.2d 405. I would hold likewise in this case.

Therefore, I respectfully dissent and would affirm the judgment of sentence.