J-A29039-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P.65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
CLINTON DANIELS, :
:
Appellant : No. 3835 EDA 2015

Appeal from the Judgment of Sentence November 24, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003662-2014

BEFORE:  LAZARUS, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 13, 2017**

Clinton Daniels (Appellant) appeals from the judgment of sentence entered November 24, 2015, after he was found guilty of robbery, conspiracy, and possessing an instrument of a crime.  We affirm.

As we write for the parties, we need not restate the underlying facts of the case herein.  Suffice it to say that the factual summary offered in the trial court's opinion accurately summarizes the evidence offered at trial.  ***See*** Trial Court Opinion, 2/16/2017 at 4-8.

Appellant was subsequently charged with several offenses, and following a non-jury trial on September 15, 2015, Appellant was found guilty of the aforementioned crimes.  On November 24, 2015, Appellant was sentenced to an aggregate term of 15 to 40 years' incarceration.

---

* Retired Senior Judge assigned to the Superior Court

Appellant timely filed a post-sentence motion, which the trial court denied. Appellant then timely filed a notice of appeal.[1] On appeal, Appellant raises a claim challenging the sufficiency of the evidence to sustain his convictions. Appellant's Brief at 3.

We address Appellant's issue mindful of the following.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotations omitted). "[I]f [the factfinder] could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict." *Commonwealth v. Davalos*, 779 A.2d 1190, 1193 (Pa. Super. 2001). The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant. *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007).

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

> An individual commits a robbery under [18 Pa.C.S. § 3701(a)(1)(ii)] if, in the course of committing a theft, he "threatens another with or intentionally puts him in fear of immediate serious bodily injury." [**Id.**] A conviction under that subsection is dependent upon the type of bodily harm threatened.

*Commonwealth v. Rodriquez*, 673 A.2d 962, 966 (Pa. Super. 1996) (citation omitted). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

> A conviction for criminal conspiracy is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with shared criminal intent and one of the conspirators committed an overt act in furtherance of the agreed upon crime. *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002); *see also* 18 Pa.C.S[] § 903.

> The essence of a criminal conspiracy is the agreement made between the co-conspirators. *Commonwealth v. Murphy*, [844 A.2d 1228, 1238 (Pa. 2004)]. "Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient." *Lambert*, 795 A.2d at 1016. Additional proof that the defendant intended to commit the crime along with the co-conspirators is needed, that is, that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." *Id.*

*Commonwealth v. Figueroa*, 859 A.2d 793, 798 (2004).

> To prove [possessing an instrument of a crime], the Commonwealth must demonstrate that the defendant "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907. An instrument of crime is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it

may have." 18 Pa.C.S. § 907(d). It is undisputed that a gun can be an instrument of crime.

***Commonwealth v. Stokes***, 38 A.3d 846, 854 (Pa. Super. 2011), *abrogated in part by **Alleyne v. United States***, 570 U.S. 99 (2013).

Upon our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Anne Marie B. Coyle comprehensively and correctly addresses and disposes of Appellant's issues and supporting arguments and evidences no abuse of discretion or errors of law. Trial Court Opinion, 2/16/2017, at 13-20. Specifically, the trial court thoroughly addressed Appellant's sufficiency arguments,[2] concluding that Mr. Netzel's

> identification through recognition of [Appellant's] grey hoodie and dark jeans was buttressed by compelling direct and circumstantial evidence. The details of this event, particularly as it related to the timing of the police response and their unequivocal observations and positive identification of [Appellant] as the driver of the getaway vehicle, proved [Appellant's] active participation in the robbery. [Mr.] Netzel, by convincingly relating the manner in which the crimes occurred, provided the qualifying offense

---

[2] Appellant's main argument in support of his sufficiency claims is that Mr. Netzel was unable to identify anyone involved in the robbery, including Appellant, "by their face." Appellant's Brief at 9. As set forth in more detail *infra*, the trial court, while acknowledging that "common items of clothing and general physical characteristics are usually insufficient to support a conviction," found that there was a plethora of additional evidence presented that linked Appellant as a perpetrator of the robbery and related offenses. Trial Court Opinion, 2/16/2017, at 12 (citing ***Commonwealth v. Minnis***, 458 A.2d 231, 233 (Pa. Super. 1983) ("[A]lthough identification based solely on common items of clothing and general physical characteristics is insufficient to support a conviction, such evidence may be considered to establish identity along with other circumstances and the proffered identification testimony[.]") (internal citation omitted)).

elements for [r]obbery. Mr. Netzel was certainly threatened with and was placed in fear of serious bodily injury when he was beaten and robbed of his possession at point of a fired gun.

*Id.* at 14-15. Sitting as finder of fact, the court found Appellant's testimony that he was innocently sitting in the vehicle and had no part in the robbery not to be believable, noting Appellant was identified by Officer Klepac as the driver of the getaway vehicle, Mr. Netzel's wallet was found on the ground right outside the driver's side door, and Mr. Netzel's cellphone was recovered by officers from the porch where Appellant was eventually found and arrested after he fled on foot. *Id.* at 8, 16. Furthermore, the trial court determined that the evidence sufficiently set forth the elements of criminal conspiracy, as the facts presented revealed that Appellant had acted in concert with his cohorts to commit the robbery, and by finding as such, the elements of possessing an instrument of a crime were "firmly established via the evidence establishing [Appellant's] role as an accomplice or co-conspirator with the weapon wielder."[3] *Id.* at 20.

Judgment of sentence affirmed.

---

[3] ***See also Commonwealth v. Davalos***, 779 A.2d 1190, 1194 (Pa. Super. 2001) ("Once conspiracy is established and upheld, a member of the conspiracy is also guilty of the criminal acts of his co-conspirators. ***Commonwealth v. Roux***, 350 A.2d 867, 871-872 (Pa. 1976). There is sufficient evidence to uphold [a]ppellant's convictions for aggravated assault and possessing an instrument of crime as well as criminal conspiracy.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA ) | PHILADELPHIA COUNTY |
| ) | COURT OF COMMON PLEAS |
| ) | |
| VS. ) | |
| ) | NO. CP-51-CR-0003662-2014 |
| ) | |
| CLINTON DANIELS ) | |
| ) | |

**FILED**

FEB 1 6 2016

Criminal Appeals Unit
First Judicial District of PA

CP-51-CR-0003662-2014 Comm. v. DANIELS, CLINTON
Opinion

7907534381

## OPINION

Appellant, Clinton Daniels, as the above-named Defendant, seeks review of the Orders and Judgments of Sentences imposed on November 24, 2015 by the Honorable Anne Marie Coyle, Judge of the Court of Common Pleas for the First Judicial District Criminal Division. Within the Defendant's Statement of Matters Complained Of On Appeal Pursuant to Pa. R. P. 1925(b), the Appellant claims he was illegally sentenced to a mandatory minimum sentence of ten years of incarceration for Robbery as a second strike pursuant to a mandatory minimum statute which prevented the sentencing judge from imposing a guideline sentence including Appellant's offense gravity score. The Defendant claims that the basis for the illegality was that the trial court never mentioned what crime and year Defendant was previously convicted as a first strike offense. Additionally, the Appellant claims the evidence was insufficient to sustain the convictions for Robbery, Conspiracy, and Possessing and Instrument of Crime.

## PROCEDURAL HISTORY

The underlying charges stem from the arrest of Defendant, Clinton Daniels, on February 15, 2014 at 3:30 a.m. in the area of Frankford Avenue and Benner Street in the city and county of Philadelphia, following the gunpoint robbery of the complainant Thomas Netzel. After the

1

preliminary hearing, arraignment, and numerous continuances, the case was eventually scheduled for trial before the Honorable Anne Marie B. Coyle on September 15, 2015. Prior to beginning the trial, this Court revisited and litigated a previously filed Motion to Suppress, which had been part of an omnibus motion that had been filed on the Defendant's behalf on November 4, 2014, by the Defender Association. After full and fair hearings, the trial court denied all motions.

The Defendant knowingly and voluntarily waived his right to a jury trial as evidenced by the oral and written colloquies and the case proceeded to trial before the Honorable Anne Marie B. Coyle, Judge of the Court of Common Pleas for the First Judicial District, Criminal Division. The case in chief presented by the Commonwealth of Pennsylvania, by and through its Assistant District Attorney, Tracie Gaydos, was completed on September 15, 2015. The Defendant was represented by his trial counsel Douglas P. Earl, Esquire.

The Defendant testified at trial that he did not participate in the actual robbery but admitted driving the getaway vehicle. After a full and fair trial concluding on September 16, 2015, the Defendant was found guilty of: (1) Robbery- Threatened Immediate Serious Bodily Injury, under 18 § 3701 §§ AII, graded as a Felony of the First Degree; (2) Conspiracy, under 18 § 901, graded as a Felony of the First Degree; and (3) Possessing Instrument of Crime, under 18 § 907 §§ A, graded as a Misdemeanor of the First Degree.

As the presiding trial jurist, the Honorable Anne Marie B. Coyle directed the completion of Presentence Evaluations and Mental Health Evaluations by the First Judicial District Probation and Parole Department, and scheduled the sentencing hearing in due course for November 24, 2015. After review of all completed presentence reports and consideration of all relevant data submitted concerning the Defendant at a full and fair sentencing hearing, the Honorable Anne Marie B. Coyle imposed the following sentences:

2

Count 1: Robbery- Minimum ten (10) years state term incarceration to Maximum twenty (20) years incareceration;

Count 2: Conspiracy- Minimum five (5) years state term incarceration to Maximum twenty (20) years incarceration, to run consecutively to count 1;

Count 8: Possessing Instrument of Crime- Minimum two and one half (2.5) years state term incarceration to Maximum five (5) years incareceration, to run concurrently to all other counts.

The resulting aggregate sentence was a minimum period of confinement of fifteen (15) years state term incarceration to maximum period of confinement of forty (40) years. The Defendant was ordered to have no contact with the complainant or any member of the complainant's family. Parole conditions including random drug and alcohol testing and random home visits were imposed.

On November 24, 2015, trial counsel for the Defendant, Douglas Earl, Esquire, filed a Motion to Withdraw as the Defendant's appellate attorney. On December 4, 2015, Mr. Earl, as trial counsel, also filed a Motion for Reconsideration of Sentence. The matters were scheduled for December 9, 2015, but continued until December 15, 2015. On December 15, 2015, the Defendant was not transported to the Courthouse causing delay of one day. On December 16, 2015, this Court denied the Motion For Reconsideration. On December 18, 2015, a timely Notice of Appeal was filed on behalf of the Defendant.

On December 21, 2015, this Court directed Douglas Earl, Esquire as trial counsel to file a concise Statement of Errors Complained of on Appeal on behalf of the Defendant pursuant to Pa.R.A.P. 1925(b). On January 5, 2016, Douglas Earl, Esq. was permitted to withdraw as counsel, and Michael Marryshow, Esquire was appointed as appellate counsel on behalf of the Defendant. On March 17, 2016, a second order directing the filing of the 1925(b) Statement was entered by

3

the Court. On April 5, 2016, a concise Statement of Errors was finally filed on behalf of the Defendant.

FACTUAL HISTORY

At trial, the Commonwealth of Pennsylvania established beyond a reasonable doubt that on February 25, 2014, at approximately 3:00 a.m. the victim, Mr. Thomas Netzel, was walking toward the Frankford Elevated Train Terminal on his way to work the early morning shift at the Philadelphia Soft Pretzel Company located in Center City section of Philadelphia. As Mr. Netzel travelled near the intersection of Frankford Avenue and Benner Street, he held a cup of coffee in one hand, had head phones in his ears, and wore a book bag strapped across his chest. His phone and wallet were safely tucked in his pockets.

At trial, Mr. Netzel credibly testified that two unmasked black males man up from behind Mr. Netzel and grabbed and pulled him down from both sides into a nearby parking lot. He reported one of the black males wore a gray hoodie and rifled through his pockets, removing his cell phone and wallet with contents. He stated the other black male wore a black hoodie and held a small handgun to his back and restrained his arms. Mr. Netzel related that the males attempted to also take his messenger bag, which was ripped off of his body and fell to the ground. (N.T. 09/15/2015, pp. 90-95).

Thomas Ntezel remembered that after the wallet and the phone were taken by the male in the grey hoodie, the male in the black hoodie attempted to swing the gun at him, and is so doing lost control of the weapon. The male in the grey hoodie then knocked the victim toward the ground and punched him a number of times in the head. As Mr. Netzel fought back, the male in the black hoodie retrieved the gun and pointed it directly at Mr. Netzel. (N.T. 09/15/2015, pp. 96-99). The male in the grey hoodie then shouted "Just shoot him already." (N.T. 09/15/2015, p. 99). Both

4

males faced the victim as the male in the black hoodie fired the gun directly at Mr. Netzel. Both males then ran together to an awaiting vehicle located further down the block.

Mr. Netzel testified that he was shocked when he "saw the flash of the muzzle go off". He immediately looked behind him and saw both men run together up Benner and Frankford toward a Toyota Corolla, which appeared to be parked in the middle of the street. He simultaneously saw a uniformed police patrol car approach the same block. Mr. Netzel reported, "So, I ran to the cop, the police car, told them I was just robbed, they took my phone, they took my wallet, they had a gun and they fired it at me." (N.T. 09/15/2015, pp. 96-100). Just after he pointed out the vehicle the officers responded and attempted to stop this automobile that contained the fleeing perpetrators.

Uniformed Philadelphia Police Officers Martin Klepac and Roebuc reported that they were on routine patrol in the area of Frankford Avenue and Benner Street on February 25, 2014 at approximately 3:30 a.m. when Officer Klepac heard a gunshot as he turned his marked patrol vehicle from Frankford Avenue onto Benner Street. He further testified that immediately after hearing the gunshot he and his fellow officer observed Mr. Netzel running from the corner, waving his arms excitedly in the air. Mr. Netzel told the officers that he was just robbed of his cell phone and wallet, two males pointed a gun at him, and that the males got into a silver vehicle that was double parked on Benner Street. (N.T. 09/15/2015, pp. 17-19; 100).

Officer Klepac testified at trial that he simultaneously observed the silver Toyota Corolla that Mr. Netzel described, and immediately pulled his patrol car directly behind the silver Toyota Corolla. He activated his lights and sirens to attempt to pull the vehicle over to the side of the road. The vehicle continued to drive down the street towards Brous Street, which is the next block north of Frankford Avenue. The vehicle stopped after making the right turn onto Brous Street, at

5

which point Officers Klepac and Roebuc got out of their patrol car and carefully approached with their guns drawn.

The officers observed the Defendant, wearing a grey hoodie and dark pants sitting in the driver's seat of the Toyota Corolla with two other occupants. Officer Roebuc told all occupants to not move and put their hands out of the windows of the vehicle. The vehicle sped away as the officers approached on foot. The Officers ran back to their patrol car and pursued the fleeing Toyota northbound on Brous Street. The Defendant sped through a stop sign and red light at a high rate of speed. The car eventually stopped on Mershon Street near Robbins Avenue, whereupon all three occupants exited and ran in different directions. Officer Klepac testified that he pursued the Defendant, who was wearing a gray hoodie sweatshirt and who had exited from the automobile from the driver's side door. (N.T. 09/15/2015, pp. 20-24).

Officer Klepac testified that he had briefly lost sight of the Defendant in the foot chase as he ran down Mershon Street into a dark breezeway. Backup officers had been radioed, and a moment later another responding Philadelphia Police Officer Scott Amrik located the Defendant on Cardiff Street, which was roughly one block away from Mershon Street. As Officer Amrik surveyed the area, a neighbor on Cardiff Street alerted him to a black male in a gray hoodie who had observed running across the street and hiding behind a white Mazda SUV. Officer Amrik ran past the Mazda and up to a nearby residential porch, and apprehended the Defendant as he lay hiding face prone on a porch behind bushes. Officer Amrik also observed a cell phone on the porch positioned next to the Defendant's concealed head.

Officer Amrik further testified that when he arrested the Defendant, he waited for Officer Klepac, who positively identified him as the driver of the fleeing vehicle, and the male he pursued in the grey hoodie after exiting the vehicle from the driver's side door when it had finally stopped

6

on Robbins Avenue. The HTC cell phone was recovered by the officers from the porch where the Defendant's head had been positioned on the ground when he had concealed himself on the porch. (N.T. 09/15/2015, pp. 36-38). A wallet containing identification and items belonging to Thomas E. Neztel were also recovered from the ground on Robbins Avenue just outside of the open driver's door of the assailants' vehicle. A small black simulated firearm pistol with black barrel, loaded with one 9mm blank cartridge and magazine was recovered from the right passenger floor inside this same vehicle. (N.T. 09/15/2015, pp. 125, 128).

Officer Michael Davis testified that he was instructed to drive Mr. Netzel to multiple locations to view the three apprehended males who had been detained after being observed running from the Toyota Corolla. Mr. Netzel firmly identified the silver Toyota Corolla on Robbins Avenue as the vehicle that provided the escape of the fleeing perpetrators. He confirmed ownership of his stolen wallet and its contents, including his photographic identification, SEPTA monthly Trans Pass, TD Bank Card, Game Stop membership card, recovered ten feet away from the Toyota Corolla driver's side door. He confirmed ownership of his stolen cellular phone with a red, black and blue case that had been recovered near the Defendant's final hiding spot.

When the officers transported Mr. Neztel to view three apprehended persons who had exited the fleeing vehicle including the Defendant, he was unsure of the facial features and thus could only identify the assailants from their clothing. He positively recognized the Defendant's clothing as the same worn by the black male with the grey hoodie and dark jeans who had rifled through his pockets, taken his cell phone and wallet, beat him and encouraged the male in the black hoodie to shoot him just before the gun was fired. (N.T. 09/15/2015, pp. 55; 103-106). Officer Klepac also unequivocally identified the Defendant as the driver of the same vehicle that had

7

provided the escape of the fleeing assailants and as the same person that he had chased on foot after the dangerous high speed chase had come to an end on Robbins Street.

Philadelphia Police Officer David Carter testified that he had responded to the Robbins Avenue to transport the Defendant after he was arrested. He stated that when he simply asked the Defendant for his name while being place in the back of the transporting police wagon, the Defendant ranted that "We ain't rob nobody. " He just wanted some" do I have to say the expletive? some you know crack. He said "Listen man, I got this phone and some money..." (N.T. 09/15/2015, pp. 50). The gun that had been recovered from the assailants' car was analyzed, test fired and deemed by the expert firearms examiner to be an operable blank black pistol resembling a semi-automatic 9mm Beretta handgun.

The Defendant incredibly testified that while the robbery was occurring he was simply sitting in his vehicle parked in the middle of the Benner Street with his hazard lights flashing for innocent purposes at 3:00 a.m. He heard a loud bang just before his friends jumped into his car unannounced and displayed and discussed the weapon, claimed to have a dispute with some white dude over drugs which somehow resulted in victim voluntarily giving them his wallet and cell phone. He admitted to subsequently driving away from the approaching uniformed officers and running from the vehicle after it finally stopped. He claimed that one of his companions reversed wearing a grey hoodie to display the brown colored side of the hoodie during the high speed vehicle chase.

The Defendant also incredulously denied having ever touched the victim's cell phone that miraculously appeared on the same porch when he was apprehended. He also maintained that never dropped the victim's wallet that had been recovered just outside of the opened driver's side door that he had exited. Finally, by way of stipulation by and between the Defendant and his counsel

8

and the Commonwealth's attorney, the Defendant's prior First Degree Felony Robbery conviction under Docket Number CP-51-CR-0001493-2007 which had occurred on September 19, 2008 before the Honorable Sandy L. Byrd Judge of the Court of Common Pleas for the First Judicial District of Pennsylvania Criminal Division was entered as rebuttal evidence into the trial record.

The trial court permitted the Defendant to explore the possible introduction of additional evidence from one of the other males apprehended along with him after the robbery. That male after conferring with his counsel, declined to testify due to acknowledged Fifth Amendment concerns. The trial concluded on September 16, 2016 after the Defendant's introduction of stipulated medical evidence of treatment of one of the apprehended co-conspirators males entered by way of stipulation. In light of all of the compelling direct and circumstantial evidence presented, this Court found the Defendant guilty of Robbery, as a Felony First Degree, Conspiracy as a Felony First Degree, and Possession of Criminal Instrument as a Misdemeanor of the First Degree.

DISCUSSION

In his Statement of Matters Complained of on Appeal, the Defendant asserts that he was illegally sentenced to a mandatory minimum sentence of ten years' incarceration for Robbery as a second strike pursuant to a mandatory minimum statute which prevented the sentencing judge from imposing a guideline sentence including the Defendant's offense gravity score. The Defendant claims the sentencing court never mentioned what crime and year the Defendant was previously convicted for a first strike. Secondly, the Defendant claims the evidence was insufficient to sustain a conviction of Robbery, Conspiracy, and Possession of Criminal Instrument where the complainant never saw the Defendant's face during the course of the robbery and initially only identified the Defendant by his clothing.

9

**I.** **The Court correctly sentenced the Defendant under 42 Pa.C.S.A. § 9714(a)(1), and correctly stated the Defendant's past conviction for Robbery on the Record.**

The Defendant asserts he was illegally sentenced to a mandatory minimum sentence of ten (10) years to a maximum of twenty (20) years state supervised confinement for the first degree Robbery offense as a second strike pursuant to a mandatory minimum statute under 42 Pa.C.S.A. § 9714(a)(1). He further alleges that this statute prohibited the sentencing court from considering the offense gravity score and imposing a guideline sentence. Lastly, the Defendant claims the sentencing court never mentioned what crime and year the Defendant was previously convicted for a first strike. The relevant statute states in pertinent part:

**(a) Mandatory sentence.--**
(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. 42 Pa. Stat. and Cons. Stat. Ann. § 9714 (West).

After hearing all evidence at trial and prior to the Sentencing Hearing, this Court duly directed the completion of the Presentence Report by the Adult Probation & Parole Department for the First Judicial District of Pennsylvania Court of Common Pleas Criminal Division. The Presentence Report was prepared and reviewed by counsel for both parties and this Court prior to sentencing. No challenges were raised to the accuracy of the computed of the Defendant's Prior Record Score consistent with the Sentencing Guidelines proscribed by the Pennsylvania Commission on Sentencing and pursuant to the Rules of Criminal Procedure. At the sentencing hearing, all parties through their counsel acknowledged their respective review of the Presentence

10

Investigative Report and Mental Health Evaluation. The entire Presentence Investigative Report was incorporated as if set forth in full by this Court at the sentencing hearing.

In addition, Mr. Earl, as trial counsel for the Defendant, agreed on the record that the computation of the Defendant's Prior Record Score reflective of the Defendant's recorded criminal history was a "five" based upon the data provided within the Presentence Report that had been duly prepared by Adult Probation & Parole Department for the First Judicial District of Pennsylvania Court of Common Pleas Criminal Division. This incorporated data accurately included the qualifying first strike conviction of the Defendant for Robbery had occurred in 2008 in front of the Honorable Sandy L. Byrd, Judge of the Court of Common Pleas for the First Judicial District of Pennsylvania. Additionally, it was undisputed that the Offense Gravity Score for the current Robbery offense was graded as a "ten (10)" and he corresponding recommended standard range of sentence for robbery was sixty (60) months to seventy-two (72) months with a plus or minus range of twelve (12) months. Thus the recommended guidelines which all parties adopted as valid were firmly based upon computation of correct data including the qualifying conviction.

In addition as Douglas Earl, Esquire argued on behalf of his client during the sentencing hearing, he highlighted how the Commonwealth would be seeking a mandatory sentence under § 9714. Specifically the record states:

> **MR. DOUGLAS**: Your Honor, in this case the Commonwealth is seeking a mandatory sentence under section 9714.A1, which Mr. Daniels has acquired a felony one conviction for robbery. And I believe there is a mandatory minimum of ten years. (N.T. 11/24/2015, pg. 4).

In so doing, counsel for the Defendant admitted the qualification of the mandatory minimum Robbery conviction as a first strike offense pursuant to the statute. To claim upon appeal that the imposed sentence pursuant to the accredited Robbery conviction was "illegal" because the Court

11

did not verbally repeat the adopted data is disingenuous. This is particularly true in this case because the date of the 2008 Robbery conviction was specifically entered into the trial record by way of stipulation by and between the parties through counsel during the hearing concerning the Defendant's Motion To Suppress Evidence and again during the trial held before this same sentencing jurist.

Specifically, Assistant District Attorney Tracie Gaydos announced at the end of the Motion To Suppress hearing that the Defendant had a prior conviction for Robbery in 2008 in front of the Honorable Sandy L. Byrd, Judge of the Court of Common Pleas for the First Judicial District. Defense counsel, Mr. Earl, responded and acknowledged on the record during the Motion to Suppress that he had advised the Defendant regarding his prior conviction and the impact it could have upon his sentence. (N.T. 09/15/2015, pg. 71). Additionally, during the waiver trial on September 15, 2015, Assistant District Attorney Tracie Gaydos introduced into evidence by way of stipulation with the Defendant and his trial counsel, the date of the Defendant's previous Robbery conviction as evidence of *crimen falsi* following the Defendant's testimony. Overall, the record of this case overwhelmingly demonstrates that due notice regarding the future application of the provision of the Mandatory Minimum Statute pursuant to § 9714 was provided by the Commonwealth of Pennsylvania and adopted as valid repetitively by the Defendant though his trial counsel.

Moreover, as the incorporated Presentence Report reflects, the qualifying conviction was specifically docketed under CP-51-CR-0001493-2007, for Robbery as a Felony of the first Degree on the date of September 19, 2008 before the Honorable Sandy L. Byrd, sitting as duly elected Judge of the Court of Common Pleas for the First Judicial District of Pennsylvania Criminal Division. (N.T. 09/15/2015, pp. 169-170). Thus, the sentencing hearing record explicitly and

12

implicitly establishes that the Defendant had been convicted for Robbery within the proper time period. Because all relevant data concerning the Defendant's prior robbery conviction was properly admitted into evidence and stipulated to by all parties, no "illegal" sentence was imposed.

## II. There is sufficient evidence to support convictions of Robbery, Conspiracy, and Possessing Instrument of Crime.

The Defendant complains that the trial court's verdicts of guilty for each offense were not sufficiently supported with evidence. In reviewing the sufficiency of evidence, an appellate court considers "whether the evidence presented at trial was sufficient to establish all elements of the crime beyond a reasonable doubt." *Commonwealth v. Burton*, 2 A.3d 598 (Pa. Super. Ct. 2010). The appellate court views all of the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner. *Id.* Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. *Id.* The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Feliciano*, 2013 PA Super 117, 67 A.3d 19 *quoting Commonwealth v. Stokes*, 2011 PA Super 261, 38 A.3d 846, 853-854 (Pa. Super. 2011) (internal citations and quotations omitted).

### a. Sufficient evidence existed at trial to support a conviction for Robbery

The Defendant's first claim is that there was insufficient evidence to support the verdict of guilty of Robbery. The Pennsylvania Crimes Code recites that a person is guilty of "Robbery" if, in the course of committing a theft, he or she:

> (i) inflicts serious bodily injury upon another;
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
> (iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.18 Pa.C.S.A. § 3701(a)(1).

"An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." Id. § 3701(a)(2). A person commits the crime of "theft by unlawful taking" if he unlawfully takes the movable property of another with intent to deprive him thereof. Id., § 3921(a). *Commonwealth v. Hopkins*, 2000 PA Super 47, 747 A.2d 910, 914 (2000); See *Commonwealth v. Stevens*, 237 Pa. Super. 457, 352 A.2d 509, 513 (1975) (theft is a lesser included offense of robbery).

The Defendant claims the Commonwealth presented insufficient evidence at trial to sustain the robbery conviction because the complainant never saw the Defendant's face during the course of the robbery, and only identified the Defendant by his clothing. "Evidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. S. Jones*, 954 A.2d 1194, 1197 (Pa.Super.2008), appeal denied, 599 Pa. 708, 962 A.2d 1196 (2008). Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. *Commonwealth v. Minnis*, 312 Pa. Super. 53, 458 A.2d 231, 233–34 (1983). Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Id. at 234. Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight." Id. at 233.

In the instant case, the victim's identification through recognition of the Defendant's grey hoodie and dark jeans was buttressed by compelling direct and circumstantial evidence. The details of this event, particularly as it related to the timing of the police response and their unequivocal

14

observations and positive identification of the Defendant as the driver of the getaway vehicle, proved the Defendant's active participation in the robbery. Thomas Netzel, by convincingly relating the manner in which the crimes occurred, provided the qualifying offense elements for Robbery. Mr. Netzel was certainly threatened with and was placed in fear of serious bodily injury when he was beaten and robbed of his possession at point of a fired gun.

Mr. Netzel testified that he had been simply walking toward the Frankford Elevated Train terminal to go to work at approximately 3:00 a.m. when at least two black males approached from behind him on each side. They both pulled him bodily into a parking lot. The complainant testified that one male wore a grey hoodie sweatshirt with dark jeans, and the other male wore a black hoodie sweatshirt. Mr. Netzel stated that the male with the grey hoodie reached into his pockets, grabbed his phone and wallet. Both broke his book bag as they pulled the bag from across his shoulder. Mr. Netzel further specified that the male with the black hoodie kept his arms pinned and held a gun to his back as the grey hooded male rifled through his pockets and removed his wallet and cellular telephone. The man in the gray hoodie told the man in the black hoodie to shoot the victim after he tried to fend off the multiple fisted punches thrown by the grey hooded male.

The fortuitous timing of the police response and resulting chain of events provided the necessary nexus evidence to link the Defendant's complicity in the group attack and robbery. Immediately after the shot was fired, Mr. Netzel saw the two men who robbed him run to a waiting vehicle. Simultaneously, he observed a marked police car turn onto the same block just behind the getaway vehicle. Mr. Netzel immediately flagged down the officers, reported what happened to him and pointed to the car that he had just observed. The officers positively identified the

15

Defendant as the driver of this same getaway vehicle. The victim identified the same vehicle as the one he observed the perpetrators employed to escape.

The sequence of events following the physical beating and taking of Mr. Netzel's belongings continued to implicate the Defendant when he drove the getaway vehicle away from at a high rate of speed just as the officers approached on foot after directing everyone remain in place. In so doing, he displayed his consciousness of guilt. The Defendant attempted to evade apprehension of himself and is fellow conspirators in the vehicle and escape with the gun used in the robbery along with Mr. Netzel's personal possessions. Ironically, the Defendant's testimony concerning his contorted version of events confirmed the identifications made by the Officers' of his identity as the getaway driver.

Following the automobile chase, the Defendant's foot flight from the driver's side door of the identified Toyota Corolla and his concealment on a porch of Cardiff Street also circumstantially connected the Defendant to his active participation in the robbery of Mr. Netzel. Mr. Netzel's wallet with his photographic identification, SEPTA monthly Trans Pass, TD Bank Card, Game Stop membership card had been recovered ten feet away from the Toyota Corolla driver's side door from which the Defendant had exited. The victim's stolen red with black and blue case HTC cellular telephone that had been recovered from where the Defendant's head had been on the ground as he unsuccessfully attempted to conceal himself. When the officers drove the complainant around to identify the two males who robbed him he was able to identify the getaway car, his stolen items and the Defendant's clothing as matching the culprit in the gray hoodie.

16

The cumulative direct and circumstantial evidence presented throughout the trial proved beyond a reasonable doubt that the Defendant intentionally and actively participated in the violent robbery of Thomas Netzel as charged.

**b. Sufficient evidence existed at trial to support a conviction for conspiracy as the Defendant placed the victim in fear of serious bodily injury while working in concert with another person.**

The Defendant next asserts that insufficient evidence existed to convict him of Conspiracy. The Conspiracy goal as alleged within the charging Bills of Information was Robbery. As previously mentioned, the Defendant was charged with robbery under 18 Pa.C.S. § 3701(a)(1)(i) and (ii). Under those provisions, a person is guilty of robbery, "if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(i)–(ii). *Com. v. Mitchell*, 2016 PA Super 53, 135 A.3d 1097, 1102, appeal denied, 145 A.3d 725 (Pa. 2016).

"An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." Id. § 3701(a)(2). A person commits the crime of "theft by unlawful taking" if he unlawfully takes the movable property of another with intent to deprive him thereof. Id., § 3921(a). *Commonwealth v. Hopkins*, 2000 PA Super 47, 747 A.2d 910, 914 (2000); See *Commonwealth v. Stevens*, 237 Pa. Super. 457, 352 A.2d 509, 513 (1975) (theft is a lesser included offense of robbery).

A defendant also may be guilty of Robbery as an accomplice or co-conspirator as long as the defendant possessed the requisite "mens rea" to commit the criminal act and the additional elements of accomplice liability or conspiratorial liability are established. Section 903 of the Pennsylvania Crimes Code sets forth the crime of conspiracy:

17

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. 18 Pa.C.S. § 903.

A person is a conspirator if "the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine,* 26 A.3d 1139, 1147 (Pa.Super.2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Id.*

The Defendant's only claim, is the evidence presented at trial was insufficient to sustain a conviction for conspiracy to commit robbery because the complainant was only able to identify the Defendant via recognition of his clothing. The overwhelming evidence introduced at trial in addition to the complainant's flawed identification, however, proved that the Defendant and his cohorts acted in complete concert with each other in furtherance of their goal to permanently remove Mr. Netzel of his personal property after threatening him with serious bodily injury. Each played an active part to facilitate this goal together.

At least two men approached Thomas Netzel together. One stood by each of his sides and both pulled him into the parking lot away from the street. The male in the black hoodie held the

18

gun to the victim's back at indeed shot at him while the male in the gray hoodie grabbed his wallet and cell phone and encouraged the other male to shoot him. Clearly this demonstrated a collective effort. The victim saw his attackers run together to a waiting vehicle. The Defendant drove the getaway vehicle with two passengers to evade police apprehension. All three males ran from the vehicle and left the gun used in the robbery behind in the car. Upon apprehension, the Defendant's clothing matched the clothing of the male with the grey hoodie who physically beat him, took his belongings and encouraged his co-conspirator to shoot him. Again the Defendant's flight and concealment demonstrated his consciousness of guilt. The Defendant's unsolicited comments to the transporting police officer illuminated his complicity with his associates.

Even if was not sufficiently demonstrated that the Defendant was one of the two persons who physically attacked Thomas Netzel, it was proven directly and circumstantially that the Defendant engaged in overt acts that sufficiently confirmed his culpability as a co-conspirator. He drove the getaway vehicle with the co-conspirators, gun and illicit proceeds inside at a high rate of speed to evade police apprehension. He ran and concealed himself on a porch and was apprehended within a hand sweep of Mr. Netzel's stolen cell phone. The offense elements of the conspiratorial intent and agreement and overt actions were sufficiently supported.

### c. Sufficient evidence existed to support a conviction for possessing an instrument of a crime.

Defendant next asserts that there was insufficient evident to support a conviction for Possession of an Instrument of Crime. For a person to be found guilty of possessing an instrument of crime, the Commonwealth must prove three elements beyond a reasonable doubt. It must be proven that (1) a defendant possessed the instrument with the intent to employ it criminally; (2) the instrument is one commonly used for criminal purposes; and (3) a defendant possessed the

19

instrument under circumstances not manifestly appropriate for lawful uses. *Commonwealth v. Gladden,* 445 Pa. Super. 434, 444, 665 A.2d 1201, 1206 (1995); *Commonwealth v. Foster,* 438 Pa.Super. 40, 44, 651 A.2d 163, 165 (1994); *Commonwealth v. Correa,* 437 Pa.Super. 1, 10, 648 A.2d 1199, 1203 (1994), *allocatur denied,* 540 Pa. 617, 657 A.2d 487 (1995); *Commonwealth v. Meekins,* 434 Pa.Super. 587, 590, 644 A.2d 765, 766 (1994). See 18 Pa.C.S.A. § 907.

The testimony at trial established that Thomas Netzel reported that a handgun had been pointed to his back and fired when the items were forcibly taken from him by at least two men acting in concert with each other. Further, when the Defendant testified he admitted that his associate, Mr. Ellis Washington, held the recovered handgun in the getaway car's backseat while all passengers discussed their encounter with the victim as the Defendant drove away at a high rate of speed from the responding police officers. A blank loaded and operable pistol was recovered from the same getaway vehicle. The evidence clearly establishes the recovered weapon was used during the commission of robbery which is a criminal purpose. This type of weapon or handgun is also commonly used for criminal purposes. Utilizing this weapon to facilitate a robbery is undoubtedly the opposite of using the instrument in a lawful manner. The Defendant's liability for possession of this instrument of crime was firmly established via the evidence establishing his role as an accomplice or co-conspirator with the weapon wielder. Thus, all elements of this offense were sufficiently supported by competent and compelling trial evidence.

CONCLUSION

In reviewing the entire record, this Court finds no harmful, prejudicial, or reversible error.

Accordingly, the judgment of the trial court should be affirmed.

By the Court,

DATE: 2/16/17

Anne Marie B. Coyle, J.

21